1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11  ROBERT KANANY,                          CASE NO. C11-6062 RJB

12              Plaintiff,                   ORDER ON DEFENDANT'S
                                             MOTION FOR SUMMARY
        v.                                   JUDGMENT AND PLAINTIFF'S
13                                           REQUEST FOR FURTHER
                                             DISCOVERY
14  UNION BANK, N.A., successor-in-
    interest to the Federal Deposit Insurance
    Corporation, as receiver of frontier Bank,
15
                Defendant.
16

17       This matter comes before the Court on Defendant Union Bank's Motion for Summary

18  Judgment.  Dkt. 21.  The Court has considered the relevant documents and the remainder of the

19  file herein.

20                                      FACTS

21  **A. Loans from Frontier Bank to Mr. Kanany**

22       Before Frontier Bank was closed by the Washington State Department of Financial

23  Institutions, Plaintiff Robert Kanany borrowed funds from Frontier Bank, executing notes and

24  deeds of trust.  The loans are as follows:

1      1. *Loan No. 6719421270. See* Dkt. 24-1, at 2-28. On November 7, 2006, Mr. Kanany

2 borrowed $168,750 from Frontier Bank in order to purchase a property to be short platted for

3 future development.  Along with execution of the Promissory Note, Mr. Kanany executed and

4 delivered to Frontier Bank a Deed of Trust as security for the Note.  The Note was extended

5 twice pursuant to Change in Terms agreements.  The final Change in Terms agreement reduced

6 the amount owing to $53,749.70, with a new maturity date of November 7, 2009.  The entire

7 amount of the loan was due at maturity.  Mr. Kanany did not pay off the loan.  On January 27,

8 2011, Union Bank served a Notice of Default on Mr. Kanany for failure to pay the entire amount

9 of the loan upon maturity.  A Notice of Trustee's sale was served on June 14, 2011.  The

10 Trustee's Sale was conducted on October 7, 2011.

11      2. *Loan No. 6719421304. See* Dkt. 24-1, at 30-45, and Dkt. 21-2, at 2-11.  On

12 November 15, 2006, Mr. Kanany borrowed a $99,050 business line of credit from frontier Bank

13 to use for acquisition of real estate investments.  Along with execution of the Promissory Note,

14 Mr. Kanany executed and delivered to Frontier Bank a Deed of Trust as security for the Note.

15 The Note was extended twice pursuant to Change in Terms agreements.  The final Change in

16 Terms agreement extended the maturity date of February 15, 2009.  Mr. Kanany failed to pay the

17 loan when due.  On February 1, 2010, Frontier Bank served a Notice of Default on Mr. Kanany

18 for failure to pay the entire amount of the loan on maturity.  Notice of Trustee's Sale was served

19 on September 21, 2010.  The Trustee's Sale was conducted on April 29, 2011.

20      3. *Loan No. 6719423250. See* Dkt. 24,-2, at 13-42.  On September 12, 2007, Mr.

21 Kanany borrowed $227,200 from Frontier Bank.  The funds went to the construction of a house

22 that Mr. Kanany intended to market and sell.  Along with the execution of the Promissory Note,

23 Mr. Kanany executed and delivered to Frontier Bank a Construction Deed of Trust as security for

24

the Note.  The Note was extended one time pursuant to a Change in Terms agreement; the new

maturity date was March 12, 2009.  The loan was due in full on that date.  Mr. Kanany did not

pay the loan when due.  On February 1, 2010, Frontier Bank served a Notice of Default on Mr.

Kanany for failure to pay the entire amount of the loan upon maturity.  Notice of Trustee's Sale

was served on March 15, 2010.  A second Notice of Trustee's Sale was served on March 18,

2011.  A Trustee's Sale occurred on July 8, 2011.

4.  *Loan No. 6719420017.  See* Dkt. 24-2, at 44-55.  On February 27, 2006, Frontier Bank

funded a second mortgage on Mr. Kanany's primary residence, for $233,100.  Along with

execution of the Promissory Note, Mr. Kanany executed and delivered to Frontier Bank a Deed

of Trust as security for the Note.  Union Bank processed a loan modification of this loan in 2011.

**B. Federal Deposit Insurance Corporation (FDIC) and Union Bank**

On April 30, 2010, Frontier Bank was closed by the Washington State Department of

Financial Institutions, and the FDIC was appointed as receiver.  Dkt. 24-2, at 57-59.  *See* 12

U.S.C. § 1823(c).

> The FDIC acts in two capacities. In its "corporate" capacity, the FDIC acts as a deposit
> insurer. It can either pay the depositors of a failed bank directly or transfer depositors'
> money to other insured banks. In its "receiver" capacity, the FDIC has broad authority to
> merge part or all of the failed bank with a healthy bank, assume operations of the bank, or
> both. Purchase and assumption transactions are the FDIC's most commonly used tool for
> handling failed banks. In a typical purchase and assumption transaction, the FDIC, in its
> receivership capacity, sells all of the failed bank's acceptable assets to a healthy bank,
> then sells the remaining unacceptable or problematic assets to the FDIC in its corporate
> capacity. The FDIC's corporate side then tries to collect on those problematic assets to
> protect the insurance fund's coffers.

Jason Kellogg, *D'Oench Lives, But for How Long?: The Eleventh Circuit Breathes Life into an*

*Ailing Banking Doctrine,* 30 Fla.St.U. L.Rev. 167, 170 (2002) (citations omitted).

1       Also on April 30, 2010, Union Bank acquired certain assets of Frontier Bank pursuant to

2   a Purchase and Assumption Agreement, by and among the FDIC, Receiver of Frontier Bank;

3   Union Bank, N.A.; and the FDIC.  Dkt. 24, at 1.  12 U.S.C. § 1823

4       Pursuant to the Purchase and Assumption Agreement, "[t]he Assuming Institution shall

5   notify the Receiver in writing… prior to utilizing in any legal action any special legal power or

6   right which the Assuming Institution derives as a result of having acquired an asset from the

7   Receiver, and the Assuming Institution shall not utilize any such power unless the Receiver shall

8   have consented in writing to the proposed usage." Dkt. 24-2, at 58-59. According to the

9   declaration of Matthew Turetsky, legal counsel for Union Bank, the FDIC has authorized Union

10  Bank to assert special powers set forth in 12 U.S.C. § 1823(c) and 12 U.S.C. 1825(b)(3).  *See*

11  Dkt. 24-2, at 58-59; and Dkt. 23, at 1. Union Bank has thus acquired certain assets of Frontier

12  Bank, in accord with statutory authority and pursuant to contract.

13      Nancy Opp, Vice President of Union Bank, stated in an affidavit that she has reviewed

14  those documents that were imaged into Union Bank's computer system upon its acquisition of

15  certain assets of Frontier Bank; the remaining physical files retained by Union Bank; and e-mails

16  or other written documents that were part of the acquisition of Frontier Bank's assets.  Dkt. 22.

17  Ms. Opp stated that she has found no document that would support Mr. Kanany's claims in this

18  case.  Dkt. 22; Dkt. 24, at 3. The notes and deeds of trust at issue in this case are among the

19  assets acquired by Union Bank.  Dkt. 24, at 1.

20                                      COMPLAINT

21      On November 21, 2011, Mr. Kanany filed a complaint in Pierce County Superior Court

22  against Union Bank, alleging claims for (1) breach of contract/breach of good faith and fair

23  dealing; (2) predatory lending/inappropriate lending practices; (3) bad faith; (4) unconscionable

24

1  behavior/estoppel; (5) violation of the Washington Consumer Protection Act (CPA); and (6)

2  infliction of emotional distress. Dkt. 1-1.  On December 28, 2011, the case was removed to

3  federal court, on the basis of diversity of citizenship.  Dkt. 1.

4      In his complaint, Mr. Kanany maintains that he obtained several loans from Frontier

5  Bank for real estate projects; and that his primary contact was a former Frontier Bank employee,

6  James Bouchard.  Dkt. 1-1. The complaint alleges that Mr. Kanany had several loans outstanding

7  with Frontier Bank when Mr. Bouchard made promises and assurances regarding Mr. Kanany's

8  failure to make payments on certain loans while repaying others; required Mr. Kanany to

9  terminate his partnership with Matt Hagwood in order to qualify for a refinance; and led him to

10 believe that he could refinance his loans through Frontier Bank. Dkt. 1-1. The complaint alleges

11 that Frontier Bank reported on a credit report that Mr. Kanany was delinquent on his loan

12 payments, so that he could not obtain a loan from another bank; declined to refinance the loans;

13 and refused to permit Mr. Kanany to access files so that he could develop a proposal to present to

14 the bank. Dkt. 1-1.

15                        MOTION FOR SUMMARY JUDGMENT

16     On July 26, 2012, Union Bank filed a Motion for Summary Judgment, contending (1)

17 that Mr. Kanany's claims are barred by *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447 (1942),

18 and 12 U.S.C. § 1823(e), which prohibit a borrower from asserting a cause of action against the

19 FDIC or its assignee based on unwritten agreements; (2) that the breach of contract claim is

20 barred because it is based upon alleged oral contracts to loan money; and (3) that the CPA claim

21 does not apply to banks or innocent third-party assignees.  Dkt. 21.

22     Mr. Kanany filed a late response. Dkt. 39.  Mr. Kanany argues that there are issues of

23 material fact regarding (1) the existence of a non-oral firm agreement because Frontier Bank

24

1   employee James Bouchard told Mr. Kanany that Frontier Bank had the loan restructuring

2   documents ready for Mr. Kanany to sign; (2) whether Frontier Bank and its successors interfered

3   with final execution of the loan restructuring documents; (3) whether the Assumption Agreement

4   requires Union Bank to accept the alleged commitment made by James Bouchard and Frontier

5   Bank; (4) whether Frontier Bank, as a state-chartered bank, is entitled to federal regulatory

6   exemption under Washington's Consumer Protection Act; and (5) whether Union bank is an

7   innocent assignee. Dkt. 39. In the alternative, Mr. Kanany requests a continuance to conduct

8   further discovery, alleging that Union Bank did not disclose documents concerning Frontier

9   Bank's commitment to restructure Mr. Kanany's loans. *Id.*

10        On October 11, 2012, before Mr. Kanany submitted his late response, Union Bank filed

11   its Reply, arguing that, because Mr. Kanany had not submitted a response, Union Bank's Motion

12   for Summary Judgment should be granted. Dkt. 37. Because Mr. Kanany eventually filed a

13   Response, the Court extended the time for Union Bank to file a more substantive reply. Dkt. 40.

14        In reply, Union Bank argues that summary judgment should be granted because (1) Mr.

15   Kanany's allegations of the existence of a firm agreement to refinance between himself and Mr.

16   Bouchard, and Frontier Bank's alleged interference with the execution of that firm agreement,

17   are new legal theories outside of the Complaint, and are therefore inappropriate for summary

18   judgment; (2) even if the new allegations were allowed to go forward, Mr. Kanany presents no

19   evidence that the firm agreement existed; (3) there is no evidence of a signed agreement by either

20   party; and (4) further discovery is not necessary because Union Bank fully complied with

21   discovery and production of relevant documents as requested by Mr. Kanany's previous counsel.

22   Dkt. 41.

23

24

1

<u>LEGAL STANDARD</u>

2    Summary judgment is proper only if the pleadings, the discovery and disclosure materials

3 on file, and any affidavits show that there is no genuine issue as to any material fact and that the

4 movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

5 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

6 showing on an essential element of a claim in the case on which the nonmoving party has the

7 burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

8 of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

9 for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

10 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

11 metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

12 material fact exists if there is sufficient evidence supporting the claimed factual dispute,

13 requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

14 *Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

15 *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

16    The determination of the existence of a material fact is often a close question.  The court

17 must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

18 e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

19 *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

20 of the nonmoving party only when the facts specifically attested by that party contradict facts

21 specifically attested by the moving party.  The nonmoving party may not merely state that it will

22 discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

23 to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
REQUEST FOR FURTHER DISCOVERY- 7

1   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

2   be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

3          The claims in this case are state law claims, pursuant to Washington law.  Under the rule

4   of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity jurisdiction

5   apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities,*

6   *Inc.*, 518 U.S. 415, 427 (1996).

7                                            <u>DISCUSSION</u>

8   **A.  *D'Oench* Doctrine and 12 U.S.C. § 1823(e)**

9          Union Bank contends that Mr. Kanany's claims are barred by the *D'Oench* doctrine and

10  12 U.S.C. § 1823(e).

11         The federal *D'Oench* doctrine prohibits a party from asserting a cause of action against

12  the FDIC or its assignees based upon unwritten agreements or other schemes alleged to be

13  entered into by a failed bank.  *Langley v. FDIC*, 484 U.S. 86, 92-93 (1987).  In *D'Oench Duhme*

14  *& Co. v. FDIC*, 315 U.S. 447 (1942), the United States Supreme Court enunciated this doctrine,

15  which is intended to protect the FDIC and its assignees from fraudulent schemes by borrowers of

16  failed institutions.  The doctrine also protects the FDIC by allowing bank representatives to rely

17  solely on the records of the bank in evaluating the bank's financial condition, rather than leaving

18  it exposed to suits founded on undisclosed conditions or deceptive documents. *FDIC v. Zook*

19  *Bros. Constr. Co.*, 973 F.2d 448, 1450-51 (9th Cir. 1992).

20         The doctrine established in *D'Oench* was codified and expanded in 12 U.S.C. § 1823(e),

21  as part of the Federal Deposit Insurance Act.  12 U.S.C. § 1823(e)(1)  provides as follows:

22         (1)  In general

23         No agreement which tends to diminish or defeat the interest of the Corporation in any
            asset acquired by it under this section or section 1821 of this title, either as security for a

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
REQUEST FOR FURTHER DISCOVERY- 8

1    loan or by purchase or as receive of any insured depository institution, shall be valid
2    against the Corporation unless such agreement—

3       (A) is in writing,
        (B) was executed by the depository institution and any person claiming an adverse
        interest thereunder, including the obligor, contemporaneously with the acquisition
4       of the asset by the depository institution,
        (C) was approved by the board of directors of the depository institution or its loan
5       committee, which approval shall be reflected in the minutes of said board or
        committee, and
6       (D) has been, continuously, from the time of its execution, an official record of
        the depository institution.
7

8        Either the FDIC or an assignee of the FDIC can assert the *D'Oench* doctrine/Section

9    1823 as an affirmative defense in litigation brought by a borrower who relies on oral conditions,

10   promises, or agreements.  *See Federal Financial Co v. Hall,* 108 F3d 46, 49 (4th Cir., 1997); *NW

11   Land & Investment, Inc. v. New West Fed.Sav. & Loan Ass'n*, 64 Wn.App. 938, 943-44 (1992).

12   The statutory term "agreement" in 12 U.S.C. § 1823 is defined more broadly than a mere

13   promise, and includes the "truthfulness of a warranted fact."  *Langley v. FDIC*, 484 U.S. at 92-

14   93.  "Such [oral] contracts cannot be enforced even when a bank fraudulently induces a customer

15   with oral misrepresentations, or when a customer is completely innocent."  *NW Land &

16   Investment, Inc.*, 64 Wn.App. at 944.

17       Here, the FDIC assigned its interest in Mr. Kanany's loans to Union Bank.  Pursuant to

18   the Purchase and Assumption Agreement, and the authorization of the FDIC, Union Bank may

19   assert defenses, under the authority of 12 U.S.C. § 1823.  All of Mr. Kanany's claims against

20   Union Bank are based upon the alleged oral agreements between Mr. Kanany and former

21   Frontier Bank employee, James Bouchard.  Mr. Kanany has not shown that these agreements

22   exist in writing, and Union Bank has been unable to find any record of them.  Even if a "firm

23   agreement" existed between Mr. Bouchard and Mr. Kanany and the agreement is then produced

24   during further discovery, the "firm agreement" is still not a valid agreement under 12 U.S.C. §

1   1823(e)(1) because Mr. Kanany concedes that he did not sign it.  The alleged firm agreement

2   was not executed by Mr. Kanany, as required under § 1823(e)(1)(B).  Therefore, this alleged

3   unexecuted agreement would not be helpful to Mr. Kanany's claims, and his request for further

4   discovery should be denied.

5          While Mr. Kanany's current circumstances are unfortunate and sympathetic, the law

6   cannot allow his claims to go forward without written documentation of an executed agreement

7   between himself and Frontier Bank.  Union Bank's Motion for Summary Judgment should be

8   granted, and all of the claims in this case should be dismissed.

9   **B.  Alternative Basis for Dismissal**

10         Union Bank argues that several of Mr. Kanany's claims are subject to dismissal for

11   reasons independent of 12 U.S.C. § 1823(e).  The court need not address the merits of those

12   claims because Mr. Kanany's claims are barred under 12 U.S.C. § 1823(e).

13         Accordingly, it is hereby **ORDERED** that Union Bank's Motion for Summary Judgment.

14   (Dkt. 21) is **GRANTED**.  This case is **DISMISSED WITH PREJUDICE**.  Mr. Kanany's

15   request for further discovery is denied.

16         The Clerk is directed to send uncertified copies of this Order to all counsel of record and

17   to any party appearing *pro se* at said party's last known address.

18         Dated this 24th day of October, 2012.

19

20

21         ROBERT J. BRYAN
            United States District Judge

22

23

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
REQUEST FOR FURTHER DISCOVERY- 10